We're now here 19-9002 Langston v. Commissioner of Internal Revenue. Mr. Luby, I believe you're first. Good morning, your honors. David Luby on behalf of Appellants Carlos and Pamela Langston. May it please the court. Your honors, it's our position that the tax court made fundamental legal errors in upholding the IRS's determination to disallow the Schedule C deductions with respect to Meridian 580 and Raptor RV property that were taken on their tax returns for the 2012 and 2013 tax years, as well as disallowing the Schedule E rental expenses and Form 4797 losses deduction with respect to the 75th place property. We would urge this court to overturn the tax court's decision based on the arguments in our brief as well as those presented here today. Now with respect to the Schedule C depreciation deductions, your honors, we feel that the tax court erred in finding that both vehicles were personal use vehicles of the Langstons because they failed to make any finding in their ruling that either vehicle was used for entertainment or recreation during the tax years in question. Now this lack of a finding is critical to the deductibility of these types of expenses. Whenever a facility is used for entertainment activity, those expenses are generally never deductible under Section 274. I can't listen as fast as you're talking. I'm sorry, Judge. Now although both vehicles are generally considered to be of the type used for recreation, the tax court has specifically found in its rulings that the facilities must be used for entertainment during the tax years in question in order to fit within that definition. Now if you look at all the cases that we cited in our tax court brief, it'll show that the tax court made a specific finding that any vehicle that was disallowed their deductions was being used as an entertainment facility during the years in question. Now for example, in the Becknell case, the tax court specifically found that the yacht or the boat was being directly used in fishing tournaments such that they're ultimately their deductions on that vehicle for business purposes were disallowed. Well are you just meeting the... Go ahead, I'm sorry. The first step, and please try to talk not quite so fast, but the yacht and the RV in this case are listed property under the regs, aren't they not? Are they not? They are considered listed property. They are of the type... Certain types of documentation that's prepared I think concurrently, at least needs to be contemporary documentation showing how this was used. And if that documentation is not provided, then the deduction is not, the depreciation deduction is not permitted. Am I wrong about that? Well, your honor, our first position would be that section 274 would not be applicable if there was no finding that the facilities were used for entertainment or recreation during the tax years in question. However, obviously they're listed property and under section 274 and its corresponding regulations, it does indicate that to substantiate the expense, you need to have adequate records and other cooperative evidence, usually through testimony or other documentary type of evidence. That's always usually... And that was the basis for the ruling against your clients. Wait, please slow down and also wait till we finish. Sorry, your honor. But that was the basis for the ruling, was it not? That there was inadequate documentation. So your argument I would think would have to be, no, there's not a requirement for documentation or the documentation or your clients provided adequate documentation. Sure, sure. Is there a third alternative? Well, the first argument we made was because we think the ruling was based on the revenue agent's testimony where she had observed or allegedly observed personal items littered throughout the vehicles during her visit. However, if you look at the documentary evidence in the record, that expressly contradicts her testimony. But that wasn't the basis. Why do you think that was the basis of the tax court's ruling? Tax court's ruling and the argument made by the government consistently was there wasn't the documentation required by law. Well, we think that we've met that documentation requirement. If you look at the regulation in regulation 1.274-5T, it says that you must have adequate records to substantiate the expense element of each deduction, which can also be corroborated with other evidence, other documentary evidence as to the element of the amount of the expenditure, which is usually the cost of acquisition. And then the second element with respect to that was the amount of each business use based on the appropriate measure and total use for the tax period, the time and the business purpose for the expenditure or use. Now, in our position, obviously the O'Rangers did not keep a contemporaneous record, but we feel from the surrounding facts and circumstances, the business purpose was evident such that a written explanation was not required. We feel we met this regulation in terms of all of its requirements. If you look at the amount of the expenditure, the O'Rangers produced all invoices and payments with respect to the repair and maintenance expenses. They submitted to the contract of sale the disclosure statement and promissory note showing when it was purchased, how much it was purchased for, when it was placed in the service, and when it was contributed to poor Carlos through their cooperative testimony. Now, if you look at the regulation, spouses can corroborate each other's statements, own statement through their, even though they file joint tax returns together. And so we feel that through the documents that were offered to the record of trial and other cooperative evidence through their testimony, that the business purpose of both vehicles was evident from the surrounding facts and circumstances. The only corroborative evidence then would be the corroboration of the other spouse, right? Because I mean, every document that you listed would be a document that would not necessarily relate to the business purpose of the, you know, when you bought it, when you, you know, the expenses related to those items. I mean, you would do that even if it was your personal vehicle. So, I mean, or personal items. So, if I'm hearing you, and explain to me why I'm wrong on that. Every document you listed would be a document that you would have even if it was your personal item, not a business vehicle. Well, the first element of the regulation requires corroborating your own statement with respect to amount of the expenditure, which would be the cost of acquisition, maintenance, and repairs, and other expenditures. So, that documentation proves the amount of the expenditure with respect to those vehicles. Okay, but why does it necessarily correlate to a business purpose? And I guess what I'm asking you is, is it only the testimony of the other spouse that you have to corroborate the business purpose of the expenditure? Well, we also had the manager, Gary Stewart, who testified that day, who indicated that the way that these vehicles were used, the Meridian 580 was used as a boat sales office every day during the season. The Raptor RV was used as a nighttime security post for security guards, and was used as a sailboat slip rental office at MassTed Marina during the day. And they were all used during the season. So, when you look at each element of that reg, we feel that we need all of them with respect to the actual business purpose use of both vehicles. I mean, they testified at trial that they never used them for entertainment or recreation. They were solely kept on the property of Port Carlos. They were solely used in sales offices. They never entertained any current or prospective clients on either vehicle, and never used them for any entertainment purpose prior to placing them into service at the marina. So, we feel that these Schedule C deductions are permissible, that we did meet the requirements under this particular regulation, and that the business purpose is evident from the surrounding facts and circumstances, given that they were in the boats. I mean, they were operating a marina. They're offering recreational activities to their customers. It's not beyond the realm of reason that these vehicles were used for business purposes at a marina during the years in question. They were not in an unrelated field. They're not lawyers or doctors trying to supplement or subsidize their personal expenses here. But the reason for the documentation requirement is, you've got, I don't know how many tens of And if you're going to have to take testimony on these issues to resolve every claim, that's very burdensome. So, put the burden on the taxpayers, the way the IRS has decided to proceed, and provide documentation. And it's not just to show that it was used sometimes for business purposes or not, but you might have to apportion the use, and that requires documentation. So, you're going to have to go back and say, we never used it, or, you know, when out of season, was it never used for personal purposes? There's a strong administrative interest in requiring the taxpayer to provide the documentation for this type of property, for listed property. And you're saying, but we're telling the truth, and we did use it business purposes. But you can see why that would not be adequate. I think the law is in our favor on that particular issue. I mean, I agree, Your Honor. It'd be helpful to have a contemporaneous record. But the regulation also allows for a taxpayer who fails to maintain an adequate record to substantiate the elements of the expense or use by their own statement, reinforced by other cooperative evidence sufficient to establish the elements of the expense or use. Even in the absence, that's an exception to the documentation? It's in Cone v. Commissioner, which is a Tax Court Summary Opinion 2012-86, paragraph 5, which cites this particular regulation. But that goes to the question of whether the other cooperative evidence is sufficient. I mean, it seems to me that if you're not, if you don't have contemporaneous records, then you're going to have to really provide something that would allow for the IRS to be able to make a determination. Here, you're relying in part upon two, essentially, self-interested testimony. Testimony from the taxpayers, both taxpayers, to corroborate each other's testimony, and then from the manager that they hired. I mean, that's it, right? Well, that's true, Your Honor. That's certainly permissible. I mean, spouses can corroborate each other's own statement on business purpose. Well, I'm not saying that as a general matter that that cannot be one piece. But if that's all you have, do you have a case where all you had was people corroborating each other's testimony? No, Your Honor. But we have the case site, Durgan v. Commissioner, where it allows spouses to corroborate each other's own statement on business purpose and use. And certainly the evidence can be circumstantial with respect to the surrounding facts and circumstances. So we feel that we've met our burden in this particular situation. But having said that, I'd like to move on to the 75th place property issue before I run out of time. We would also assert that the tax court erred in disallowing these expenditures because they fail to recognize that the conversion from personal to investment use can be based on the rental activity from the property itself, or it can be based on the post-conversion appreciation of value of the property. And where an individual holds property for investment use, that is basically a determination which is used to determine the taxpayer's intention. Now, although the tax court correctly identified the five factors that were involved with whether a personal residence was being converted to investment use, we feel that they weren't correctly analyzed in this particular instance. Indeed, we think four of the five factors are in our favor, with one being neutral. The one being neutral concerning the length of time that the Langston's occupied the 75th place property prior to them abandoning the residence in 2005. That was a tax court failed to address this particular point and never determined whether or not that was considered a substantial period of time. So we would feel that that factor is neutral because the tax court cases are kind of all over the place as to what's substantial. In some cases, they found six years to be insubstantial. And in other cases, they found six months to be substantial. So we would assert that because that factor is neutral, that it neither favors the government or the taxpayer. The factors in our favor would be elements two through five. Langston's completely abandoned the 75th place property in 2005, moved to a separate apartment, lived there for three years, moved all of their personal possessions out of their residence. They bought a new house in 2008, which they continued to occupy. They entered into a massive renovation for a period of five years of the property wasn't available to reoccupy. And they rented the property between July 2011 and December 2012. But they rented it for $500 a month, right? I mean, that's true. We're near fair market value that they rented it for. But that was done to protect their investment. Now, the tax court focused on that as a lack of a profit motive. But we would assert that's a true profit motive because their insurance company told them that they were going to cancel their homeowners insurance coverage because the property was vacant. And how is that profit seeking? I mean, if all of this is protecting your investment, you're protecting your you're protecting your insurance, but it's not showing you trying to make money. There's no doubt in our mind that if the taxpayer had failed to keep insurance on the property, the government would have pointed to that as lacking a profit motive because the Langston's weren't interested in protecting their investment. They spent over $700,000 on the repairs and the improvements. Certainly getting maintaining the insurance coverage is important in that situation. But it also didn't really matter if they rented it for 500 a month because they were primary intentions throughout all of their testimony. The only reason they rented the property was to take advantage or to protect the investment and make sure they didn't have a casualty loss at some point in the future through a tornado or some other activity that would destroy the property and then eliminate all of the profit that they would have potentially received. Isn't the fair market value of the property an important factor in calculating loss in this situation? It would be. And we believe that we 2001 and in the in the conversion date would have been 2005, right? That's true, your honor. We assert the conversion date is in 2005. The appraisal was from 2001 for about $290,000. We feel that that adequately established fair market value at the time, but that's something that issue and it was not ruled or ruled upon. And the government never made that argument that it was difficult to calculate what the actual loss would be. That's argument in the brief and we think that that shouldn't be considered to determine the attention of the taxpayers in this particular situation. You say it's a new argument in the brief. I mean, is there anything that would preclude us from affirming on any ground that's supported by the record? Well, it was never argued by the tax court or excuse me, by the government at the tax court trial. And the tax court never found that it would be difficult to calculate what the loss was. And I think in my brief, I put forward the calculation of what we believe the loss to be. So we think it can be determined. It looks like I'm out of time, your honors. Thank you, counsel.  Mr. Aloulis. Yes, your honor. May it please the court. My name is Paul Aloulis from the Department of Justice appearing on behalf of the commissioner of internal revenue. The tax court did not clearly air when it determined that the taxpayers were not entitled to their claimed deductions on the and the RV. The tax court did not clearly air when it determined that the taxpayers were not entitled to the claimed loss deduction on the sale of the 75th place property. And the tax court did not clearly air when it determined that the taxpayers were liable for the penalties that were asserted by the commissioner. First, with respect to the yacht and the recreational vehicle, as counsel conceded, both in briefing and today at oral argument, each of those items, the yacht and the recreational vehicle are listed property under the terms of the regulations. Because they are listed property, there is no room for any type of adjustment as to what's required. The statute and the regulations clearly require adequate documentation, not only of the expenses that are associated with that property, but with the business use of the property. And I think counsel's argument is mostly generated towards having documentation of the expenses that were associated with the purchase, the operation, the maintenance of the yacht and the RV. But what's lacking in this record, as the tax court clearly found and appropriately found, is documentation of the business use of the yacht and the RV. And when we have these types of things that are listed property, Congress has made a decision that certain types of property are of such a type that they are so likely to be used for personal use that once a piece of property is identified as being listed property, the strict substantiation requirements come into play, period. But isn't there an alternative to strict substantiation if there's testimony from the taxpayer and corroborative documentation? Your Honor, it is possible, yes, that other corroborative evidence could be brought forth in order to substantiate business use of the property. And he's saying he has it in terms of the testimony of the other spouse and the testimony of the manager. Why isn't that sufficient? Well, for one thing, Your Honor, the testimony that they provided does not meet all of the The tax court found none of that other corroborative evidence to be credible. The tax court made a specific finding in its opinion, based upon the record before it, that the testimony of the taxpayers and of their manager in that regard was not credible. And that finding, I take it itself, is subject to clearly erroneous standard of review. Is that right? I believe that that's correct, Your Honor. And in this case, I think that this is where the testimony of the revenue agent comes into play. Counsel has argued that the tax court's finding that the taxpayer's testimony is not credible itself is an erroneous determination. However, the testimony by the revenue agent tends to support the tax court's finding that the taxpayer's testimony was not credible. And the revenue agent's testimony that she identified personal items strewn throughout the yacht, for example, on her tour, including things like a bathing suit, food in the freezer, other beverages, personal grooming items in the bathroom, all of that testimony tends to show that the property was used at some time at some point for some personal use. And the reason why that supports the tax court's finding that the taxpayer's testimony was not credible is because the taxpayers testified that the yacht was never used for any personal use, period. They didn't testify that it was sometimes used for personal use, but that it was mostly used for business. They testified that it was never used for any personal use. And they testified in the same manner with respect to the RV. So the fact that there was evidence in the record of some personal use calls into question the taxpayer's testimony that it was never used for personal use. And so the taxpayer's credibility finding, and of course, this court is well aware, credibility findings are very difficult to challenge under normal circumstances. In this case, there is clear evidence on the record that supports the credibility determination. And so once the tax court's finding of lack of credibility for the taxpayer's testimony, that renders the record devoid of any supporting documentation whatsoever with regard to the business use of the yacht and of the RV. I would also point out that while counsel points to the regulation, which is cited at 26 CFR 1.2745C22B, which talks about the substantiation that is required, the type of documentation that is required to show business use as well as business expense, there is an additional regulation below that that is specifically rejected to listed property. And that is 26 CFR 1.274-5TC22C1. And that one, that regulation specifically speaks to the documentation that's required for listed property. Is that the one that has the heading rules of substantiation? The heading, Your Honor, is substantiation of business use of listed property. Okay. And there are two parts to it. And the second part states clearly, generally an adequate record must be written. However, a record of the business use of listed property, such as a computer automobile prepared in a computer memory device with the aid of a logging program will constitute an adequate record. So for listed property, the regulations go somewhat slightly further in terms of the type of documentation is required. Now, also in response to the court's point made earlier during argument that there's a burden involved in the service reviewing tax returns that have been filed when these types of deductions are claimed, especially with respect to this type of property. There is a regulation that speaks to that, Your Honor. And that is 26 CFR 1.274-5TD3. And that regulation is entitled business use of other listed property. And that regulation requires that on tax returns that are filed after 1984, when a taxpayer claims a deduction or credit with respect to any listed property other than a vehicle. And then in a parenthetical, it gives examples of such other listed property, one of which is a yacht. The taxpayers are required to disclose on the tax return, on the face of the tax return, four items, the date the property was placed in service, the percentage of the business use, whether evidence is available to support the percentage of business use, and whether that evidence is written. And so clearly the regulations contemplate, just as Your Honor pointed out, that it may be possible that listed property could be used sometimes for personal use and sometimes for business use. And that with adequate documentation declared on the face of the tax return, it could be sorted out. What percentage is personal use? What percentage is business use? In this case, the taxpayer says- You're spending so much of your time on the vehicles. What about the house? So Your Honor, the government is in agreement that the tax court also correctly determined that the taxpayers were not entitled to the claimed loss deduction with respect to the 75th place property on the ground that they had not established, they had not met their burden of establishing that the property was converted from personal use to income producing use. But they didn't abandon it. I mean, they weren't in the house for quite some time. Isn't that pretty good evidence that they're saving it for investment purposes? Your Honor, it could be, but it could also support the tax court's finding that it was not for investment purposes. I think it's important to note in this regard that when the taxpayers first moved out of the property in 2005, first, they had already begun undertaking renovations to the property a few years before moving out. They moved out in 2005. And when they did, they did not move to a new permanent residence. They moved to an apartment that they leased for at least three years. And the record indicates that when they leased that apartment, they didn't even have enough room in the apartment for them to bring all of their personal belongings with them. They were required to rent multiple different storage units around town. Like four, I think. Like four, right? Yes, Your Honor. What inference do you derive from that, though? Well, Your Honor, I think that that can be an indication that the taxpayers had an intention to return to the 75th Place property upon completion of the renovations that they were undertaking. They did not move to a new permanent residence when they undertook that renovation. They may have had the intention to return to the property. And that's what the tax court said in its opinion. The tax court said that the intention of the taxpayers upon moving out in 2005 was not clear. But it's their burden to show a clear intention that they intended for the property to be converted from personal use to income-producing use. The tax court found that they had not done that for 2005. And that factual finding, reviewed for clear error by the tax court, is supported by the record. Is the only issue then whether they had a clear intent in 2005? If the evidence might support an intent a few years later, is that an issue here? Or is the only claim that it was converted to investment property in 2005? Your Honor, the only claim the taxpayers have ever made in litigation is that it was converted to investment use in 2005. Now, on the tax returns that they filed, prepared by their advisor, Ms. Birch, they indicated that the conversion date was July 1st, 2011, which was the date on which they rented the property, as Judge Holmes pointed out, at the non-market rate of $500 per month. So when they first initially filed their tax returns, they claimed that the date was July 1st, 2011. That's really the conversion date that they indicated. But for purposes of litigation, are we focused on the 2005? I understood that was the figure that was before the tax court when we're operating. Yes, Your Honor, that's correct. For purposes of litigation, the date that they indicated is 2005. However, I believe that the fact that they initially, when they filed their tax returns, claimed a date of July 2011, and then later, after disallowance, they arrived at a date of 2005, calls into question the intention of the taxpayers. Is there something in the record with respect to the 2011 date? Under testimony by Mr. Luby, Ms. Birch testified that she felt that that was simply an error. She had made a mistake in placing that date in the tax return simply as a result of that having been the date that it was converted to rental property. Now, the reason why these dates matter, I think as apparent to the court, is that if the property was converted in 2005, then the taxpayers may be entitled to their basis the extent of renovations that were done from 2005 to 2011. If the property was converted in 2011, then of course, they would not be entitled to include any of those things. And so, at the end of the day, whether it's 2011 or 2005, it's the taxpayer's burden to prove when it was converted. They didn't prove- But the date that they are operating on and the date that the tax court ruled on was 2005, right? That's correct, Your Honor. The only thing, if, per your response to my question, the only thing in the record is Ms. Birch saying it's a mistake. Then that, I mean, that doesn't get us a whole lot to validate the 2011 date as being the accurate one, does it? No, Your Honor. What I'm saying is that the taxpayers at different times have put forth two different dates, and that's another reason why there isn't sufficient evidence to establish which date is a conversion date, if any. The tax court found that the property was never converted to an investment use. We feel that that finding by the tax court is supported by the record. And again, as the court pointed out, the lack of evidence of fair market value at the claimed conversion date by the taxpayers is fatal to their claim because the calculations required under the regulation need that fair market value in order to determine what the loss would be. That in itself was enough, right, to render that claim invalid. Even if there was a clearly established conversion date, lack of fair market value evidence on the conversion date would be fatal to the claim of the deduction. And in that regard, Your Honor, I was doing some research yesterday just to update for- Counsel, counsel, counsel, you're over time. So I want you to answer Judge Holmes's question, but be very specific. I only wanted to provide the court a new citation, if I may. Well, do that in supplemental authority, right? If you're comfortable with that, Judge Hart. Yeah, I'd be comfortable. And there is one issue we haven't addressed. And I'd like to give each side a minute on this, but I'm going to cut you off after one minute. Very well, Your Honor. And that is the penalty. Even if it's owed, why is the penalty required? And because you're up now, I asked Mr. Lula to address that. But I'm going to cut you off in one minute. Your Honor, we feel that the- No, no, I said Mr. Well, go ahead, Mr. Lube, if you want to go first. Go ahead. Oh, I'm sorry. I thought you- Well, we feel that the reasonable cause was established in this particular instance. We feel the license acted with ordinary business care imprudence and hiring a competent tax professional to prepare their tax returns for the tax years in question. They are not tax experts. They do not prepare tax returns. They gave Ms. Birch all credible and accurate information with respect to both vehicles, as is to its business use and purpose, the repair and maintenance expense items, cheap repair to depreciation schedules. The license also gave her credible information with respect to the 75th place property, the rental expenses, as well as the loss deduction. Ms. Birch gave them advice that those deductions were proper during the tax years in question. They relied upon her advice. They acted in good faith and believed that they had complied with all necessary requirements with respect to their tax returns. Didn't she ask- The reasonable cause was established in this particular case. Time out. Didn't she ask for additional materials, and they never gave it to her? Did she ask for additional materials? Yes. From the taxpayer? Well, she did independent research on all of the issues. She got all of the documents from the taxpayers that were presented to the tax court. We feel she had all necessary information to prepare the tax returns. They never gave her the appraisal. Well, the appraisal was from 2001, the fair market value appraisal, but she did have the insurance appraisals from that timeframe. Thank you, counsel. Mr. Lewis. Your honors, again, as stated in our briefs, we believe that the reasonable cause defense does not apply. Ms. Birch testified at trial, she advised the taxpayers that they needed to know the fair market value in order to calculate the loss. That is at volume 14A of the appendix, page 2232. With regard to the yacht and the recreational vehicle, Ms. Birch testified that she advised the taxpayers to claim the deduction even without substantiation, even though she testified, she understood this property to be listed property. That is at volume 14A, page 2215. And that eliminates any reasonable cause defense because when asserting a reasonable cause defense in reliance on a tax advisor, the taxpayer must show that the advice of the qualified advisor took into account all facts and circumstances and was not based on unreasonable factual or legal assumptions. Thank you, counsel. Thank you. A case is submitted. Counsel are excused.